IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MASON K.,[1]

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

No. 1:25-cv-00542-HZ

OPINION & ORDER

Katherine Eitenmiller
Katie Taylor
Wells, Manning, Eitenmiller & Taylor, P.C.
474 Willamette Street
Eugene, OR 97401

Attorneys for Plaintiff

Susanne Luse
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Noah Schabacker
Special Assistant United States Attorney
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

Attorneys for Defendant

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

HERNÁNDEZ, Senior Judge:

Plaintiff Mason K. brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on October 4, 2022, alleging an onset date of November 1, 2003. Tr. 200.[2] Her application was denied initially and on reconsideration. On June 4, 2024, Plaintiff amended her alleged onset date to October 3, 2022. Tr. 188.

On December 12, 2024, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 34-56. On December 26, 2024, the ALJ found Plaintiff not disabled. Tr. 18-28. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on "autism, depression, severe anxiety, gender dysphoria, panic attacks, and self-harm." Tr. 22. At the time of her amended alleged onset date, Plaintiff was 22 years old. Tr. 174. Plaintiff has a high school education and no past relevant work. Tr. 26. 40.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

§ 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her October 3, 2022 amended alleged onset date. Tr. 19. At steps two and three, the ALJ determined that Plaintiff has the severe impairments of "autism spectrum disorder; major depressive disorder; gender identity disorder; borderline personality disorder; and generalized anxiety disorder." Tr. 19. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. The ALJ concluded that Plaintiff has the residual functional capacity to perform "a full range of work at all exertional levels" with the following nonexertional limitations:

> [Plaintiff] can understand, remember, and carryout simple instructions; perform work that is not at a production pace, so no assembly line pace work or work with a production quota; and can deal with occasional changes in a routine work setting. [Plaintiff] is capable of no interaction with the general public and no more than occasional interaction with coworkers, with no teamwork.

Tr. 21. At step four, the ALJ concluded that Plaintiff does not have any past relevant work. Tr. 26. At step five, the ALJ found that Plaintiff could perform other work in the national economy. Tr. 26. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. 27.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.

*Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony; (2) partially rejected lay witness testimony; and (3) partially rejected the opinions of Michelle Sharp, PMHNP, Psy.D.; Jacqueline Hall, PMHNP; and Kris Hallenburg, Psy.D.

**I. Plaintiff's Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). "The ALJ 'engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.'" *Putz v. Kijakazi*, No. 21-35733, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). First the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." *Putz*, 2022 WL 6943095, at *2 (quotation omitted). The claimant need not show the "impairment could reasonably be expected to cause the severity of the symptom . . . alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quotation omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific,

clear[,] and convincing reasons for doing so." *Putz*, 2022 WL 6943095, at *2 (quotation omitted). *See also Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006) (same). When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quotation omitted). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

On October 25, 2022, Plaintiff completed an Adult Function Report in which she stated that since her conditions began she has been "extremely anxious & withdrawn," she is "very stressed & anxious & [has] body dysphoria." Tr. 214, 216. Plaintiff states that her daily activities include brushing her teeth, eating cereal, "play[ing] video games in bed [and] stay[ing] in bed all day until lunch and dinner then bed time." Tr. 211. Plaintiff prepares food or meals "daily" and can make cereal, ramen, macaroni and cheese, and pizza roles. Tr. 212. Plaintiff's only household chore is doing the dishes. *Id*. Plaintiff goes outside once a week, does not drive, shops online for video games once a month, plays video games daily, texts and video chats daily, and "sometimes" goes out to dinner or to a doctor's appointment. Tr. 212-14. Plaintiff follows written and spoken instructions "well," gets along "good" with authority figures, and has never been fired from a job because of problems getting along with other people, but she is "not good" at handling stress or changes in routine. Tr. 215-16.

At the December 12, 2024 hearing Plaintiff testified that she cannot work a full-time job because she has "panic attacks very easily. Like if something goes wrong around the house, [she] can't forgive [herself] for it. And with motivation, most days it's hard to get out of bed." Tr. 43. Plaintiff stated she would "likely still be thrown into a panic attack" if she "had a job where [she] didn't have to be around other people" because "if [she] does something slightly wrong, [she] panic[s] about it." Tr. 43-44. Plaintiff has panic attacks "about every week." Tr. 48. Plaintiff's panic attacks last three or four hours during which time she "isolate[s] [herself]." Tr. 44. Plaintiff "thought about" suicide "within the last month" before the hearing but she does not go to the hospital every time she has suicidal thoughts because "all they seem to do for [her at the hospital] is . . . hold [her] in a room for a few hours and send a crisis counselor to see [her]. And then, they just . . . discharge" her. Tr. 46. When Plaintiff is depressed, there is "not much [she] can do other than . . . lay in bed . . . immobilized by the depression." Tr. 46. Plaintiff cannot focus on YouTube videos or scroll on her phone when she is having a depressive episode because her "attention span is severely diminished." Tr. 46-47. Plaintiff has seven to ten "days per month like that." Tr. 47. Plaintiff has tried several medications for depression, but none have been effective long term. Plaintiff's mother cooks, does Plaintiff's laundry, and cleans the house because Plaintiff "panic[s] pretty bad . . . because [she] is afraid . . . [she's] messing it up, and . . . it will ruin everyone's day." Tr. 48. Plaintiff testified that "a janitorial position [would not] work out" because she "struggle[s] with manual labor" and she's "a germaphobe, so [she is] afraid of . . . seeing gross things and getting dirty." Tr. 49. When Plaintiff leaves the house, it is "easy for [her] to panic and feel like people are judging" her. Tr. 50-51.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the

intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22. The ALJ acknowledged Plaintiff's "long history of mental health symptoms and impairments" and that Plaintiff "has persistent symptoms which have proven difficult to manage." Tr. 22, 23. The ALJ noted, however, that on March 8, 2023, Kris Hallenburg, Psy.D., conducted a psychiatric consultative examination and concluded that Plaintiff is able to manage funds, "although she reported she was not good with money she correctly did money calculations on the MSE"; is able to understand, remember, and carry out simple instructions; and is "able to sustain concentration and persist in work-related activity at a reasonable pace, including regular attendance at work and completing work without interruption." Tr. 692. The ALJ stated that although Plaintiff alleged an inability to work due in part to panic attacks, recent treatment notes did not reflect the weekly panic attacks that Plaintiff testified to at the hearing. Tr. 23, 1357. The ALJ also noted that Plaintiff successfully worked part time at Dollar Tree as a cashier for about a year and left because customers made her feel "uncomfortable" and her boss was transphobic. Tr. 24, 690. Plaintiff also worked a seasonal job at Game Stop, which she enjoyed because she felt accepted. Tr. 24. The ALJ added that Plaintiff stated at the hearing that she could not do "non-social," janitorial jobs because she is a germaphobe and has physical limitations, but neither of those conditions is supported by the medical record. Tr. 25.

The record reflects that Plaintiff advised her counselor, Sky Snogren, LPC, that when she worked at Game Stop "those 2-3 months she wasn't suicidal and was generally more happy." Tr. 880. Snogren noted that "[a]fter game stop ended, [Snogren] . . . continued encouraging [Plaintiff] to get another job [but Plaintiff] continue[d] to find reasons to not get another job." Tr.

884. The record does not contain any opinion from any medical professional that Plaintiff is germophobic or that she has physical limitations that would prohibit work in janitorial jobs.

The Court concludes on this record that the ALJ did not err when she partially rejected Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## II. Lay Witness Statement

Plaintiff alleges the ALJ erred when she partially rejected the lay witness statement of Plaintiff's mother.

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. § 404.1520c(d). The Ninth Circuit has "not yet addressed whether an ALJ is required to provide germane reasons for discounting lay witnesses under the new regulations." *Wilson v. O'Malley*, No. 23-35463, 2024 WL 2103268, at *2 (9th Cir. May 10, 2024). This Court and many district courts in the Ninth Circuit, however, have held the ALJ must still articulate the assessment of lay witness statements. *See, e.g., Rebecca F. v. Comm'r, Soc. Sec. Admin.,* No. 6:23-CV-00988-HZ, 2024 WL 2151939, at *4 (D. Or. May 14, 2024); *Daniel T. v. O'Malley*, No. 3:22-CV-1479-SI, 2024 WL 1636459, at *8 (D. Or. Apr. 16, 2024); *Christopher M. v. Comm'r, Soc. Sec. Admin*., No.

6:22-cv-01378-SB, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, No. 3:22-cv-05855-GJL, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00321-TUC-LCK, 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L. S. v. Kijakazi*, No. 5:23-cv-00006-BFM, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

On October 25, 2022, Plaintiff's mother, Rhiannon K., completed a Third Party Adult Function Report in which she described Plaintiff's usual day as "brushes teeth + hair, eats breakfast, goes back to bed, plays video games or looks at phone or lays there until lunch + dinner." Tr. 224. Plaintiff makes her own meals daily and can make macaroni and cheese, pizza rolls, cereal, and ramen. Tr. 225. Plaintiff's only chore is doing the dishes three times per week. Tr. 225. Plaintiff goes outside once per week and shops by computer for games once per month. Tr. 225. Plaintiff games daily, texts or video chats daily, goes to doctors' appointments "on a regular basis," goes out to dinner "sometimes," and goes places "once or twice a month." Tr. 227. Plaintiff does not have problems getting along with family, friends, or neighbors, but is

"severely anxious/withdrawn [and] barely leaves [her] room." Tr. 228. Plaintiff can pay attention for one hour, follows written and spoken instructions "well," and gets along "good" with authority figures." Tr. 228-29. Plaintiff does not handle stress or changes in routine well. Tr. 229. She suffers from anxiety, stress, body dysphoria, and insolation." Tr. 229.

On June 17, 2024, Plaintiff's mother submitted a statement in which she noted that Plaintiff can prepare some basic premade foods, but "anything else she needs 100% help with and gets anxiety doing." Tr. 1114. Plaintiff "cannot rip the parchment paper or open containers without help (even though she has been shown many times)." *Id.* Plaintiff "does not do chores unless asked and given step by step instructions" and they must be "simple chores like unloading the dishwasher or feeding the cat." Tr. 1115. Plaintiff "stays in her bedroom all day and night and consumes herself with video games, stuffed animals & anime. She only leaves her bed to go to the bathroom and eat." *Id.* Plaintiff does not "speak unless spoken to" and does most appointments by telehealth because it is too stressful for her to leave the house. *Id.*

The ALJ found these statements are not entirely consistent with the record. For example, Plaintiff went out with friends occasionally and was able to work at Dollar Tree and Game Stop. Tr. 25, 1123. The ALJ noted that "if [Plaintiff] were truly incapable of basic tasks such as opening containers, then it is surprising she was able to work for a year previously at Dollar Tree or enjoy her work at Game Stop." Tr. 25. Further, the record does not support an inability to perform simple tasks or to do things like open containers or rip parchment paper.

The Court concludes the ALJ did not err when she partially rejected Rhiannon K.'s statements because the ALJ provided germane reasons supported by substantial evidence in the record for doing so.

## III. Medical Opinion Evidence

Plaintiff contends the ALJ erred when she partially rejected the opinions of Michelle Sharp, PMHNP, Psy.D.; Kris Hallenburg, Psy.D; and Jacqueline Hall, PMHNP.

For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

**A. Michelle Sharp, PMHNP, Psy.D.**

On June 11, 2024, Dr. Sharp completed a statement in which she noted she had been treating Plaintiff since September 30, 2023, and saw Plaintiff every four weeks. Dr. Sharp stated Plaintiff suffers from depression, gender dysphoria, borderline personality disorder, and "autism spectrum." Tr. 1082. Dr. Sharp noted Plaintiff "is not able to tolerate most interactions with others and struggles to leave her home. [She] finds it very difficult to impossible to take on new tasks or learn new skills." *Id*. In addition, Plaintiff "experiences intervals of severe mental health symptoms that would interfere with sustained work routine." *Id.* Dr. Sharp completed a check the box medical source statement in which she stated Plaintiff has mild limitations in her ability to carry out simple instructions; moderate limitations in her ability to understand and remember simple instructions, to make judgments on simple work related decisions, to understand and remember complex instructions, and to interact appropriately the public, supervisors, and coworkers; and marked limitations in her ability to carry out complex instructions, to make judgments on complex work related decisions, and to respond appropriately "to usual work situation [*sic*] and to changes in routine work setting [*sic*]." Tr. 1084. Dr. Sharp indicated that Plaintiff's "[h]igh levels of depression and very intrusive symptoms of gender dysphoria impair [her] cognitive abilities, . . . memory, processing, and judging are all affected." Tr. 1084. Plaintiff also "has difficulty processing social cues and tolerating social interactions," they can "trigger extreme emotional distress." Tr. 1085. Dr. Sharp opined Plaintiff's "anxiety and intrusive thoughts" would "preclude [work] performance for 15% or more of a 7.5 hour work day" and prevent her from maintaining a regular work schedule more than four days per month. Tr. 1086.

The ALJ found Dr. Sharp's statement to be "not fully persuasive." Tr. 25. The ALJ noted that "[n]ot even moderate limits in understanding, remembering, and carrying out simple instructions are consistent with the record." Tr. 25. Plaintiff had intact recall at two psychological evaluations, could perform serial 3 and an average digit span tests, and could perform a multistep task. Tr. 25. Dr. Hallenburg opined in her medical source statement that Plaintiff could "understand, remember, and carry out simple instructions" and "function at entry level jobs," noting Plaintiff "was able to do an average level of digit span forwards and backwards, delayed recall, and serial 3s correctly." Tr. 692. During her evaluation by Jacqueline Hall, Plaintiff had "3/3 on immediate recall" and "3/3 on remote" and adequately performed abstract thinking and calculations. Tr. 1073-74. The ALJ added that Dr. Sharp's opinion that Plaintiff had marked limitations in responding appropriately to a usual work situation and absenteeism/time off task is not supported because the record reflects Plaintiff had success in working retail and Plaintiff's assertion that she cannot work in non-social janitorial type jobs because she is a germaphobe and has physical limitations is entirely unsupported by the record.

On this record the Court concludes the ALJ did not err when he found the portions of Dr. Sharp's opinion related to Plaintiff's limitations in understanding, remembering, and carrying out instructions; responding appropriately to work situations; and absenteeism/time off task were not fully persuasive because the ALJ provided reasons for doing so based on substantial evidence in the record.

**B. Kris Hallenburg, Psy.D.**

On March 8, 2023, Dr. Hallenburg conducted a psychiatric consultative examination of Plaintiff and concluded Plaintiff is "able to manage funds"; to understand, remember, and carry out simple instructions; and "to sustain concentration and persist in work-

related activity at a reasonable pace, including regular attendance at work and completing work without interruption." Tr. 692. Dr. Hallenburg opined that Plaintiff cannot understand, remember, and carry out complex instructions or "interact with coworkers and superiors and the public and adapt to the usual stresses encountered in the workplace." Tr. 692-93.

The ALJ found this opinion to be "partly persuasive." Tr. 26. Specifically, the ALJ found that Dr. Hallenburg's opinion that Plaintiff "could not interact with coworkers, superiors, and the public or adapt to usual workplace stressors is not well supported." *Id*. The ALJ noted that limitation "was supported by reference only to [Plaintiff's] subjective reports, whereas examination observations included that while [Plaintiff] had poor interpersonal confidence, she was cooperative and polite with fair eye contact." Tr. 26, 690. In addition, Plaintiff informed Jacqueline Hall that "historically [she] did not get along with supervisors, but coworkers were good." Tr. 1072. The ALJ added that Plaintiff stated in her Adult Function Report that she got along "good" with supervisors. Tr. 26, 215. The ALJ also noted that when vocational rehabilitation attempted to steer Plaintiff to non-social janitorial jobs, Plaintiff declined due to the type of work. Tr. 26, 476 (Plaintiff "was very clear [she] was not interested in working [in] janitorial/maintenance"). Plaintiff's explanation at the hearing that she declined that work because she was germophobic and had physical limitations was not supported by evidence in the record.

On this record the Court concludes the ALJ did not err when she found Dr. Hallenburg's opinion to be partially persuasive because the ALJ provided reasons for doing so based on substantial evidence in the record.

**C. Jacqueline Hall, PMHNP**

On February 19, 2024, Hall conducted a psychological assessment of Plaintiff and noted that Plaintiff was "pleasant and cooperative, maintained direct eye contact during most of exam, [and] was engaging during the evaluation." Tr. 1073. Plaintiff had immediate and remote attention and recall "3/3." Tr. 1073. Hall noted Plaintiff's medical records "provide [a] documented historical diagnostic list of Autism, Major Depression and Gender Dysphoria" and opined that Plaintiff "appears to be . . . suffering from the symptoms of anxiety, depression, chronic suicidality, hopelessness, social awkwardness, erratic sleep patterns, and dysphoria related to their gender." Tr. 1074. Hall concludes "[t]his symptom profile greatly inhibits their ability to find and maintain work." *Id.*

The ALJ found Hall's opinion to be unpersuasive because it is "vague and do[es] not address specific work-related functional limitations," the "level of limitation indicated is not supported by contemporaneous objective findings," and it is inconsistent with prior findings by Dr. Hallenburg. Tr. 26. As noted, Dr. Hallenburg opined that Plaintiff is "able to manage funds"; to understand, remember, and carry out simple instructions; and "to sustain concentration and persist in work-related activity at a reasonable pace, including regular attendance at work and completing work without interruption." Tr. 692. Hall does not explain or describe how Plaintiff's symptoms greatly inhibit her ability to find and maintain work nor does she provide specific functional limitations related to Plaintiff's symptoms.

On this record the Court concludes the ALJ did not err when she found Hall's opinion to be unpersuasive because the ALJ provided reasons for doing so based on substantial evidence in the record.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: September 24, 2026

Marco Hernández

MARCO A. HERNÁNDEZ
United States Senior District Judge